UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KARRAR ALMALIKI,

    Petitioner,

v.

ICE FIELD OFFICE DIRECTOR,

    Respondent.

Case No. C20-0344-MJP-MAT

REPORT AND RECOMMENDATION

## I. INTRODUCTION

Petitioner, a native and citizen of Iraq who is proceeding *pro se* in this 28 U.S.C. § 2241 habeas action, seeks release from immigration detention or a bond hearing. (Dkt. 1.) Currently before the Court is the Government's motion to dismiss. (Dkt. 5.) Petitioner did not file a response. Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that the Government's motion to dismiss be GRANTED and Petitioner's habeas petition be DENIED.

## II. BACKGROUND

Petitioner was admitted to the United States as a refugee in August 2010 and became a lawful permanent resident in December 2012. (Dkt. 5-1 at ¶¶ 4-5.) In 2015, Petitioner engaged in

REPORT AND RECOMMENDATION - 1

a series of crimes that resulted in him being charged with one count of attempted robbery, two counts of grand theft, thirteen counts of burglary, and eight counts of misdemeanor petty theft, all in violation of Idaho law. (*Id.* at ¶ 6; *see also* Dkt. 5-2.) On December 30, 2015, Petitioner was convicted pursuant to a guilty plea to one count each of burglary, grand theft, and attempted robbery. (Dkt. 5-1 at ¶ 7; Dkt. 5-2 at 5-7.) The state court sentenced him to prison "for a minimum period of confinement of two (2) years and a subsequent indeterminate period of confinement not to exceed eight (8) years, for a total aggregate term of ten (10) years." (Dkt. 5-2 at 6.)

On March 9, 2018, Petitioner was transferred from state custody to the custody of U.S. Immigration and Customs Enforcement ("ICE"). (Dkt. 5-1 at ¶ 9.) The U.S. Department of Homeland Security ("DHS") served him with a Notice to Appear, charging him with removability pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii), as an admitted noncitizen who had been convicted to two crimes involving moral turpitude not arising out of a single scheme of misconduct. (*Id.*) On March 28, 2018, ICE filed an additional charge of removability against him for having been convicted of an attempted aggravated felony theft offense. (*Id.* at ¶ 10.) Petitioner subsequently submitted an application for relief from removal under the Convention Against Torture ("CAT"). (*See id.* at ¶ 13.)

On April 3, 2018, Petitioner appeared before an immigration judge ("IJ") for his initial bond hearing. (*Id.* at ¶ 11.) After an evidentiary hearing, the IJ found that Petitioner posed a danger to the community and ordered him to be held without bond. (*Id.* at ¶ 11, Ex. A.) Petitioner waived appeal of this determination. (*Id.* at ¶ 11, Ex. A.)

On July 16, 2018, the IJ issued a decision denying Petitioner's application for relief from removal under the CAT and ordered him removed to Iraq. (*Id.* at ¶ 13, Ex. B.) Petitioner filed a timely appeal to the Board of Immigration Appeals ("BIA"), which dismissed his appeal on

1    December 21, 2018. (*Id.* at ¶ 16, Ex. D.) On January 22, 2019, Petitioner filed a petition for review
2    with the Ninth Circuit, which granted his motion for a stay of removal pending adjudication of the
3    petition. *See Almaliki v. Barr*, No. 19-70229, Dkts. 1, 10 (9th Cir.).

4    On January 29, 2019, Petitioner filed a pro se motion for a new bond hearing. (Dkt. 5-1 at
5    ¶ 22, Ex. G.) The IJ denied Petitioner's motion, finding that he had failed to establish a material
6    change in circumstances as required by 8 C.F.R. § 1003.19(e). (*Id.* at ¶ 22, Ex. I.) Petitioner did
7    not appeal this decision. (*Id.* at ¶ 22.)

8    On July 25, 2019, the Iraqi government issued a temporary travel document for Petitioner
9    authorizing his return to Iraq. (*Id.* at ¶ 21.) The Ninth Circuit's stay of removal was in effect,
10   however, and Petitioner was not removed.

11   On October 8, 2019, Petitioner filed a second pro se motion for a new bond hearing. (*Id.* at
12   ¶ 22, Ex. H.) The IJ denied the motion, finding again that Petitioner had failed to establish a
13   material change in circumstances as required by regulation. (*Id.* at ¶ 22, Ex. J.) Petitioner did not
14   appeal this decision. (*Id.* at ¶ 22.)

15   On March 2, 2020, Petitioner filed the instant habeas petition, seeking release or a second
16   bond hearing. (Dkt. 1.)

17   On May 1, 2020, the Ninth Circuit remanded Petitioner's case to the BIA. *Almaliki*, Dkt.
18   41. The parties have not provided further information to the Court regarding the status of
19   Petitioner's removal proceedings.

20                              III.    DISCUSSION

21   Title 8 U.S.C. § 1226 provides the framework for the arrest, detention, and release of non-
22   citizens, such as Petitioner, who are in removal proceedings. 8 U.S.C. § 1226; *see also Demore v.*
23   *Kim*, 538 U.S. 510, 530 (2003) ("Detention during removal proceedings is a constitutionally

REPORT AND RECOMMENDATION - 3

permissible part of that process."). Section 1226(a) grants DHS the discretionary authority to determine whether a noncitizen should be detained, released on bond, or released on conditional parole pending the completion of removal proceedings, unless the noncitizen falls within one of the categories of criminals described in § 1226(c), for whom detention is mandatory.[1] 8 U.S.C. § 1226.

When a noncitizen is arrested and taken into immigration custody pursuant to § 1226(a), ICE makes an initial custody determination, including the setting of bond. *See* 8 C.F.R. § 236.1(c)(8). After the initial custody determination, the detainee may request a bond redetermination by an IJ. 8 C.F.R. § 236(d)(1). At the bond redetermination hearing, the burden is on the detainee to show to the satisfaction of the IJ that he warrants release on bond. *See In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006). In making a bond decision under § 1226(a), an IJ must consider whether the detainee "is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *Id.* (citing *In re Patel*, 15 I. & N. Dec. 666 (B.I.A. 1976)). An IJ also may consider any number of discretionary factors, including: (1) whether the detainee has a fixed address in the United States; (2) the detainee's length of residence in the United States; (3) the detainee's family ties in the United States, and whether they may entitle the detainee to reside permanently in the United States in the future; (4) the detainee's employment history; (5) the detainee's record of appearance in court; (6) the detainee's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the detainee's history of immigration violations; (8) any attempts by the

---

[1] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to DHS, while the DOJ's Executive Office for Immigration Review retained its role in administering immigration courts and the Board of Immigration Appeals. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

REPORT AND RECOMMENDATION - 4

detainee to flee persecution or otherwise escape authorities; and (9) the detainee's manner of entry to the United States. *Id.*

If the IJ denies bond, the detainee may appeal to the BIA. 8 C.F.R. § 236.1(d)(3). If the BIA affirms the IJ's decision, the detainee may seek habeas relief from the district court. *Leonardo v. Crawford*, 646 F.3d 1157, 1159-61 (9th Cir. 2011); *Sun v. Ashcroft*, 370 F.3d 932, 941 (9th Cir. 2004). Federal district courts have jurisdiction to review bond hearing determinations for constitutional claims and legal error, *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011), but they cannot second guess an IJ's discretionary judgment regarding the application of § 1226(a), 8 U.S.C. § 1226(e).

Once an IJ has made an initial bond redetermination, a detainee's request for a subsequent bond redetermination must be made in writing and must show that the detainee's circumstances have changed materially since the prior bond redetermination. 8 C.F.R. § 1003.19(e).

In moving to dismiss, the Government assumes Petitioner is detained under § 1226(a), the statute that Petitioner identifies in his habeas petition. (*See* Dkt. 5 at 10.) A noncitizen detained under § 1226(a) is entitled to release only if he can show that his detention is indefinite within the meaning of *Zadvydas v. Davis*, 533 U.S. 678 (2001). *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1062-63 (2008). In *Prieto-Romero*, the Ninth Circuit held that the petitioner's detention was not indefinite because the government could repatriate him to Mexico if his petition for review was unsuccessful. *Id.* Here, the Government has presented evidence that it will be able to repatriate Petitioner to Iraq if he is ultimately ordered removed. (Dkt. 5-1 at ¶ 21.) Accordingly, Petitioner's removal is not indefinite, and he is not entitled to release.

Petitioner also seeks an additional bond hearing. Until recently, Ninth Circuit jurisprudence required noncitizens detained under § 1226(a) to be provided automatic bond hearings every six

REPORT AND RECOMMENDATION - 5

months at which the government was required to justify continued detention by clear and convincing evidence. *Rodriguez v. Robbins*, 804 F.3d 1060, 1084-85, 1087 (9th Cir. 2015) ("*Rodriguez III*"), *rev'd sub nom Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). The Supreme Court reversed, explaining that the Ninth Circuit had misapplied the canon of constitutional avoidance and that "[n]othing in § 1226(a)'s text . . . even remotely supports the imposition of" periodic bond hearings where the government bears the burden. *Jennings*, 138 S. Ct. at 847. The Supreme Court did not decide whether the Constitution requires such periodic hearings and remanded to the Ninth Circuit for consideration of that question.[2]

On the facts of this case, the Court concludes that due process does not require an additional bond hearing at this time. "Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). To determine the requirements of due process, courts consider (1) the private interest affected, (2) the government's interest, and (3) the value added by alternative procedural safeguards to what has already been provided in the particular situation before the court. *Id.* at 334-35; *see also Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 775 (N.D. Cal. 2019) ("In the absence of binding authority establishing a categorical right to a periodic bond hearing, the Court must conduct an individualized due process analysis pursuant to the conventional [*Mathews*] factors.") (internal quotation marks omitted); *Madrigal v. Nielsen*, No. 18-843, 2018 WL 4732469, at *3 (W.D. Wash. Aug. 31, 2018), *Report and Recommendation adopted*, 2018 WL 4700552 (W.D. Wash. Oct. 1, 2018) (applying *Mathews* due process analysis to determine whether due process required subsequent bond hearing).

Petitioner's freedom from detention is at stake, which is an important interest that "lies at the heart of the liberty that [the Due Process] Clause protects." *Rodriguez III*, 804 F.3d at 1066.

---

[2] The Ninth Circuit subsequently remanded to the district court. *Rodriguez v. Marin*, 909 F.3d 252 (9th Cir. 2018) ("*Rodriguez IV*").

Petitioner has been detained since March 2018, and it has been over two years since his bond hearing. This is significant. The government also has legitimate interests that are implicated by Petitioner's continued detention: assuring he will appear if ultimately ordered removed and protecting the public from him given his criminal history. *See Soto v. Sessions*, No. 18-2891, 2018 WL 3619727, at *4 (N.D. Cal. July 30, 2018) (citing 8 C.F.R. § 236.1(c)(8) (allowing release from detention if noncitizen "is likely to appear for any further proceeding" and "would not pose a danger to property or persons")); *Zadvydas*, 533 U.S. at 690-91). As to the third factor, Petitioner already has received one individualized bond hearing before an immigration judge, who found that he presents a danger to the community. He did not appeal that decision to the BIA, and he does not argue here that the IJ committed constitutional or legal error. Petitioner has also filed two requests for subsequent bond hearings under the regulations that allow for additional bond hearings based on a showing of materially changed circumstances. He did not identify any change in circumstances, however, and both requests were denied. He did not appeal either denial. In this case, Petitioner also fails to identify any change in circumstances.

Weighing the three *Mathews* factors in light of the current record, the Court concludes that Petitioner has received all of the due process protections to which he is entitled at this time. Although he has been detained for a prolonged period of time and has not received a bond hearing in over two years, he fails to identify any change in his circumstances that might warrant a different bond determination. *See Lopez Reyes*, 362 F. Supp. 3d at 777 (granting subsequent bond hearing based on evidence of a "material change in circumstances coupled with the passage of time," and noting that the court was "*not* making a finding that the mere passage of time requires a second bond hearing") (emphasis in original).

/ / /

REPORT AND RECOMMENDATION - 7

IV.  CONCLUSION

The Court recommends that the Government's motion to dismiss (Dkt. 5) be GRANTED, Petitioner's habeas petition be DENIED, and this action be DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **September 4, 2020**.

Dated this 10th day of August, 2020.

*[signature]*

Mary Alice Theiler
United States Magistrate Judge